UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHARLES LAFFERTY, JR., | Case No.: 3:22-cv-00147-MMD-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | |
| WEILAND, et al., | Re: ECF No. 27 |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 27, 27-1 to 27-5, 29-1, errata at 33-1 to 33-2, manual filing noted at ECF No. 31.) Plaintiff filed a response. (ECF No. 34.) Defendants filed a reply. (ECF Nos. 35, 35-1.) Plaintiff filed a sur-reply. (ECF No. 36.)

After a thorough review, it is recommended that Defendants' motion be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 3.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

The court screened Plaintiff's complaint and allowed him to proceed with an Eighth Amendment excessive force claim against defendants Weiland, Rigney, and Milke. (ECF No. 2.)

Plaintiff alleges that defendant Weiland asked him to step against the wall, and when Plaintiff complied with the order, Weiland bashed Plaintiff's head against the wall. He claims that Weiland swept his feet out from underneath him, taking Plaintiff to the ground. Then, while he was face down on the ground, Weiland hit Plaintiff several times in the back of the head and called for backup. Plaintiff avers that when Correctional Emergency Response Team (CERT) Officer Rigney arrived, he put Plaintiff in mechanical wrist restraints and began twisting and pulling at Plaintiff's fingers, causing severe pain. When Officer Milke arrived, he sat on Plaintiff's back and wrapped his hands around Plaintiff's head and used his fingers to gouge at Plaintiff's eyes. Plaintiff maintains he did not do anything to provoke this use of force.

Defendants move for summary judgment, arguing they did not use excessive force against Plaintiff.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Rule 56(d)**

In his response to Defendants' motion, Plaintiff states that Defendants' statement of undisputed facts can be disproved through review of video evidence from the handheld camera. He also states there will be multiple issues of material facts from camera footage, inmate witness testimony, expert testimony, and other things unknown to Plaintiff once he is allowed to submit motions for the production of documents from Defendants and other sources. He requests that key evidence that can prove or disprove Plaintiff's case should be reviewed by the court before summary judgment is given.

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

"Rule 56(d) provides a 'device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence.'" *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002)). "A party seeking additional discovery under Rule 56(d) must 'explain what further discovery would reveal that is essential to justify [its] opposition to the motion[ ] for summary judgment.'" *Id.* (quoting *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980) (alterations original, quotations omitted).

Plaintiff does not provide an affidavit or declaration to support his request to defer ruling on Defendants' motion for summary judgment. The only specific evidence he identifies is the handheld camera footage, that he says will support his claim. The court ordered Defendants to provide this video to Plaintiff, and allowed him to supplement his response to Defendants' motion. (ECF No. 43.) Defendants filed the handheld camera footage manually with the court and provided it for Plaintiff to review (ECF Nos. 44, 45); however, Plaintiff did not file a supplemental response.[1] Therefore, to the extent Plaintiff requests that the court defer ruling on Defendants' motion based on access to the handheld video footage, Plaintiff's request should be denied.

---

[1] As a result, Defendants' obligation to file a supplemental reply was not triggered.

1  Plaintiff has not identified any other specific evidence he needs in an affidavit or declaration (or otherwise) to justify the court's deferral of ruling on this motion under Rule 56(d).

**B. Eighth Amendment Excessive Force**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327). While *Whitley* used the phrase "maliciously and sadistically," an excessive force claim does not require proof the officer enjoyed the use of force. *Hoard v. Hartman*, 904 F.3d 780 (9th Cir. 2018). Instead, the focus is on whether the officer had purpose to cause harm: "[A]n officer who harms an inmate in part of a good-faith effort to maintain security has acted constitutionally, but an officer who harms an inmate 'for the very purpose of causing harm,' …

has engaged in excessive force, provided that the other elements of excessive force have been met." *Id.* at 788 (quoting *Whitley*, 475 U.S. at 321).

In determining whether the use of force is excessive, courts are instructed to examine "the extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Defendants submit declarations stating that on September 24, 2021, Weiland was working in Unit 8 serving food when Plaintiff approached him in an angry and aggressive manner, and he questioned Weiland regarding an earlier incident involving another CERT officer in the culinary. Weiland maintains Plaintiff was making threats about the other officer, and Weiland told him that he was going to take him out of the culinary for his comments. As Weiland turned away, he claims that Plaintiff followed him and continued to threaten other officers. Weiland told Plaintiff to get against the wall, but Plaintiff refused and continued to scream in his face. As a result, Weiland used his hand to direct Plaintiff against the wall, and when he continued to resist and turned toward Weiland, Weiland used Plaintiff's arm to guide Plaintiff to the ground in a prone position. Weiland states Plaintiff began to push away, and he radioed regarding a use of force in the Unit 8 hallway. Officers arrived, and Weiland was relieved of his position. (Weiland Decl., ECF No. 27-4.)

According to Rigney, he responded to the spontaneous use of force, and he went to secure Plaintiff's upper extremities. However, Plaintiff was resisting and attempting to move his wrist from his lower back. Rigney assisted in holding Plaintiff's wrist and helped place his wrist restraints. Once Plaintiff was fully secured, Rigney maintained positive control of Plaintiff's left

arm. An order was given to stand Plaintiff up and Plaintiff was evaluated by medical. Rigney maintains he did not twist or pull at Plaintiff's fingers. (Rigney Decl., ECF No. 27-3.)

      Milke was also working in Unit 8 serving food, and when he received notice on the radio of a spontaneous use of force, he went to assist. When he arrived, Plaintiff was on the ground, resisting, with other officers around him. Milke assisted in "segmenting" Plaintiff, taking the head position. Milke maintained a triangle with his hands over Plaintiff's ear so he could still hear the commands. Once restrained, Milke moved off of Plaintiff, and he was lifted up for medical examination. Milke denies gouging Plaintiff's eyes or making contact with his eyes. (Milke Decl., ECF No. 27-5.)

      Defendants also submit video footage from security cameras in the hallway to support their position. As Defendants acknowledge, there is no sound on the video. The incident occurs quickly and, for the most part, the officers' positions obscure the view of Plaintiff and any alleged use of force. An inmate, who the court assumes is Plaintiff, can be seen in the video speaking with a CERT Officer, presumably Weiland. Weiland walks away and Plaintiff follows him, and then Officer Weiland very quickly pushes Plaintiff into the wall and then takes Plaintiff to the ground. The court is unable to tell from the video whether Plaintiff was resisting. Weiland can then be seen pushing Plaintiff's head into the floor and kneeling on Plaintiff's back while holding a hand to Plaintiff's head. It is impossible to tell from the video the amount of force Weiland is using when pushing Plaintiff's head into the concrete floor. It then appears that Weiland is attempting to restrain Plaintiff. Another officer arrives and then three more officers surround Plaintiff. Then, an officer arrives with what looks like a handheld camera. Additional officers arrive and surround Plaintiff on the ground. Another officer eventually arrives and takes over the handheld camera.

The handheld camera shows Plaintiff already on the ground being restrained by a group of officers. One officer can be seen holding Plaintiff's head to the floor. The camera frequently pans away, or as a result of the number of officers surrounding Plaintiff, it is not possible to see what is occurring at certain times while Plaintiff is on the ground. At one point, the officer holding Plaintiff's head to the floor is seen standing up while pushing Plaintiff down. Again, it is impossible to tell from the video what kind of force that officer was exerting on Plaintiff's head, but a jury could possibly conclude that it was excessive based on the video evidence and Plaintiff's testimony. In addition, when medical arrives, an abrasion can be seen on Plaintiff's head, and there is an abrasion and bleeding at the bridge of his noise. His eyes appear show redness, and he can be seen grimacing while he is being evaluated.

Plaintiff's medical record from that day notes a small abrasion on the left side of Plaintiff's head; an approximately ¾ inch shallow laceration on the left eye below the eyebrow; a small hematoma on the right inner corner of the upper eye; reddened eyes bilaterally; redness below the left ear into the neck. Plaintiff complained of his fingers being broken, but his grip was equal and strong bilaterally. (ECF No. 29-1.)

Defendants contend they used a reasonable amount of force to restrain a resistant inmate. Plaintiff, on the other hand, maintains that Defendants used excessive force against him. He points to the video, as well as his medical record that shows his injuries as a result of the incident.

Both the video and the medical record suffice to create a genuine dispute of material fact as to whether Defendants used excessive force against Plaintiff. Therefore, Defendants' motion for summary judgment should be denied.

///

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Defendants' motion for summary judgment (ECF No. 27.)

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: November 17, 2023

_____
Craig S. Denney
United States Magistrate Judge